William O. Ross, appellant,

*v.*

John Stevens, respondent.

The evidence in this case, as shown by defendant's letters, was held to show a joint venture by the complainant and defendant in the purchase and sale of certain lands, whereby each was entitled to one-half of the profits realized, and that defendant must account therefor, a sale having been effected by him at an advance.

On appeal from a decree advised by Vice-Chancellor Van Fleet, who filed the following conclusions, on motion to dissolve the injunction :

There are several expressions in the defendant's letter of May 3d, 1886, going to show that the purchase made by the defendant of Schofield was a joint venture, into which the complainant and defendant entered, with the understanding that they were to share profits and bear losses equally. The first is : "It is hereby distinctly understood and agreed that this purchase is a joint transaction, *involving you equally with me.*" Next the letter says : "It is further agreed between us that we are to share equally in any profit *or loss* resulting from this transaction," and then it says, that the defendant is to share in all the commissions which the complainant may receive, directly or indirectly, from handling

the land *while the defendant has control of it.* The plain import of the letter is, that the purchase of the contract was a joint venture, in which the complainant and defendant were to share benefits and burdens equally. There is nothing in it which shows clearly that it was the understanding that if the complainant failed to effect a sale of the land prior to the 21st of July, 1886, his rights in the venture were to cease; on the contrary, the conduct of the parties shows, I think, quite clearly, that such was not their understanding. If it had been, it is manifest that the complainant would have insisted that the offer, $1,500, for the repurchase of the contract, should be accepted.

I am of opinion that the venture was a joint one, and it follows, consequently, that the mortgage is joint property, unless it be true, as the defendant alleges, that the complainant, prior to July 1st, 1886, relinquished or abandoned the venture. The claim, on the part of the defendant, that he did, is new matter, which the defendant must establish by a clear preponderance of proof, to be entitled to prevail. The burden of proof, on this point, is on him.

Viewing the case in this aspect, it is clear that the equity upon which the complainant's right to the injunction rests is not denied in such manner as to entitle the defendant to a dissolution.

His motion to dissolve must be denied, with costs.

And also the following conclusions, after the final hearing :

The proofs fail to show that the complainant abandoned the contract sued on, or relinquished his rights under it. On this point the burden of proof is on the defendant.

To succeed, his proofs must outweigh those of the complainant. The defendant's proofs, standing alone, uncontradicted by the complainant, would not, in my judgment, be sufficient to establish a case of relinquishment or rescission.

My opinion as to the construction of the contract has undergone no change since the motion to dissolve the injunction was decided, except that my conviction that the construction then

adopted is the true one is rather stronger now than it was then. The purchase of the contract was a joint venture. The contract so expressly declares. It says : " This purchase is a joint trans-action, involving you equally with myself." Again : " We are to share equally in any profit or loss resulting from this transac-tion." There can be no doubt that if the defendant, after taking title, had been compelled to sell at a loss, the complainant would have been liable to answer to him for the one-half of it. The words, " the said purchase has been made solely in the expectation of your (the complainant) being able to sell the property prior to the time when the contract expires, at an advancement on the purchase-price," cannot be construed to limit the complainant's right to such profits as should be made on a resale of the contract before the day on which the deed for the land was to be delivered, but they were obviously inserted to show the inducement which led the defendant to make the purchase, and also to show that in case a resale of the contract was not effected before the time when the purchase-money was to be paid and the deed delivered, the defendant should be subject to no duty to the complainant to use his own money to pay for the land, and that if loss resulted from his failure to do so, the complainant should nevertheless be answerable for one-half of it.

The complainant is entitled to one-half of the profit made by the defendant on the sale of the land. The defendant must ac-count. A reference will not, however, be ordered in the first instance. The decree will direct the defendant to deliver to the complainant's solicitor, within twenty days after service of a copy of the decree, an itemized account, showing the gross profits realized and also the deductions which the defendant claims should be made therefrom to show the net profit ; the complain-ant shall, within ten days after receiving the account, notify the defendant's solicitor, in writing, whether he is satisfied with the accuracy of the account or not, and if not satisfied, he must state the particulars in which he believes the account to be erroneous, and thereupon either party may, on five days' notice to the other, apply to the court for direction as to how the objections or exceptions to the account shall be tried and determined.

If the complainant is satisfied with the account rendered by the defendant, he may at once, on receiving the account, apply for a decree.

The complainant is entitled to costs.

*Mr. James P. Northrop* and *Mr. Hamilton Wallis,* for the appellant.

*Mr. Cortlandt Parker,* for the respondent.

PER CURIAM.

This decree unanimously affirmed, for the reasons given by the vice-chancellor.